### ALBERT TAYLOR v. THE STATE.

#### No. 1825.   Decided June 23, 1899.

**1.  Murder—Irrelevant Evidence.**

On a trial of a stepfather for the murder of his 8-year-old stepdaughter, by beating her with a rope, evidence that defendant was a strong, able-bodied man, and that his wife was a small woman, is wholly irrelevant, but not of a character to authorize a reversal alone for error in its admission.

**2.  Same—Nonexpert Opinion Evidence.**

On a trial for murder, a witness shown to have no medical experience is not competent to give his opinion that the deceased had been whipped with a rope, and that a certain wound upon the body had been made with a stick or board, notwithstanding he testified he had been an overseer for many years and had whipped many a one with a rope.

**3.  Pardon.**

The proper county in which the conviction of a pardoned convict was had may be proved, although the wrong county was inserted in the pardon, which had been erased and changed by the insertion of another county.

**4.  Witness—Conditional Pardon.**

A conditional pardon, that is, one stating that it is subject to revocation, granted a convict after he had served out his term in the penitentiary, and for the purpose alone of restoring his citizenship, is a nullity in so far as the condition of revocation is concerned.  There is nothing for the Governor to revoke in such a case, and the pardon is absolute.  Such a pardoned ex-convict is a competent witness.

**5.  Murder—Charge.**

On a trial for murder, where the evidence clearly discloses that the killing was occasioned by a beating inflicted with a rope, it was error for the court to charge the provisions of articles 652 and 653 with regard to a murder predicated upon a neglect or failure to call in aid to preserve the life of the injured party, there being no evidence calling for such a charge; and especially where the court had absolutely limited the consideration of the jury to murder in the first and second degrees.

**6.  Same—Manslaughter—Charge.**

On a trial for murder of a female, caused by the infliction of a whipping in a very cruel manner with a rope, which may or may not have been a deadly weapon, the court should have given in charge to the jury the provisions of articles 718 and 720 of the Penal Code, submitting manslaughter as an issue in the case.  And the charge, failing to submit manslaughter, and limiting the jury to murder in the first and second degrees, was erroneous.

APPEAL from the District Court of Wharton.   Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of murder in the first degree; penalty, death.

The indictment charged appellant with the murder of Carrie Reed, by beating and bruising her with a rope, on or about the 26th day of December, 1898.   The deceased was the stepdaughter of appellant, and was a girl of some seven or eight years of age.

No briefs for appellant have come to the hands of the Reporter.

*D. W. Wilcox* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death. The indictment charges defendant with killing Carrie Reed by beating and bruising her with a rope. The testimony shows that Carrie Reed was the stepdaughter of appellant and seven or eight years of age. There was no eyewitness to the transaction. A few days prior to the whipping, which resulted in the death of the little girl, appellant gave her another very severe whipping with a rope.

The first, second, and third bills of exception were reserved to the introduction of testimony which shows that defendant was a strong, able-bodied man, and his wife a small woman. While we would not, perhaps, feel justified in reversing the judgment for the admission of this testimony, yet we are unable to ascertain its relevancy, or what light it shed upon the transaction.

The fourth bill was reserved to the following evidence of Hall: "In my opinion, the child was whipped with a rope. I have been overseer for many years, and have whipped many a one in the same way. The wound in the head I am pretty certain was made with a sharp stick or board. I have had no medical experience, and do not know whether the blood found on the rope was human blood, horse blood, or rabbit blood." This testimony, in our opinion, was inadmissible and injurious.

Over appellant's objection, Abe Hatchett was permitted to testify. In this connection it is shown that Governor Ireland, on the 7th of December, 1885, issued a pardon to Hatchett, restoring him to citizenship. His conviction was for the theft of cattle, at the August term, 1873, of the District Court of Wharton County; and the jury assessed a punishment of four years in the penitentiary. So it will be seen that the consummation of the punishment had expired some eight or nine years prior to the issuance of the pardon. There was a condition stated in this pardon that the Governor reserved the authority to revoke it if the grantee should violate any of the criminal laws of the State. The objection urged was that this was a conditional pardon, which did not restore citizenship, in that it was not a full and free pardon, and therefore not effective as such, and it was not shown that he had observed the condition reserved. It is also contended the pardon on its face was inoperative, because it was first stated that the pardon was issued to Brazoria County, and Brazoria County erased and changed to Wharton County. The bill itself sufficiently shows that the conviction did occur in Wharton County; and this may be proved, although the wrong county was inserted. By an unbroken line of decisions in Texas it has been held that a conditional pardon

does not restore the convict to his right of citizenship, because of the fact that it is subject to revocation. This, of course, means where the condition is a valid and legal one. But in every one of such cases the conditional pardon was issued before the convict had served out his term, and in such case the pardon was subject to revocation; and it was held that, as long as this condition was a valid one, it did not restore the party to his rights of citizenship. The reasoning of these opinions we adhere to, and think they are correct. If not, then the Governor would have the right to restore the convict to his citizenship one day and deprive him of same the following day. As we understand the express provisions of the Constitution, no man can be deprived of his rights as a citizen, in regard to voting, sitting upon juries, holding office, and testifying in the courts of the country, except on conviction for felony. Therefore, if the Governor had restored the rights of citizenship, if these constitutional provisions mean anything, it would take the verdict of a jury in another felony case to deprive him of such rights. It could not be done in that case by a jury; for he had been once convicted, and could not be a second time placed in jeopardy or on his trial for the same offense. But that rule does not hold good in this case. Here the party had served his time, and the pardon was issued subsequently, for the purpose of restoring citizenship, and for no other purpose, and so expressed on the face of it. There was nothing for the Governor to revoke. The pardon having restored him to the full enjoyment of all the rights of citizenship, such rights could not be taken away by the Governor, nor by any authority; and this would be true, whether stated in the pardon or not. We are therefore of opinion that the condition in this character of pardon is void, and the pardon absolute. The court did not err in permitting the witness Hatchett to testify.

Exception was reserved to the action of the court in charging murder in the first degree. There is no merit in this position. In our opinion there was evidence which justified this charge.

The court gave in charge articles 652 and 653, Penal Code. Exception was reserved to this, and especially to that portion which says that, if the person inflicting the injury which makes it necessary to call aid in preserving the life of the person injured shall willfully fail or neglect to call such aid, he shall be deemed equally guilty as if the injury were one which would inevitably lead to death. There is no evidence in the record which shows, or tends to show, a state of case calling for this charge; and, the court having limited the consideration of the jury to murder in the first and second degrees, we think it was error. But if we are wrong, then the court should certainly have given in charge articles 718 and 720 of the Penal Code. In this connection, article 718 provides that "if any injury be inflicted in a cruel manner, though with an instrument not likely under ordinary circumstances to produce death, the killing would be manslaughter or murder, according to the facts of the case." Now, if appellant is guilty

of murder, under the facts, it is on account of the fact that with a large rope he inflicted injury in a cruel manner upon the little child. We take it that whipping with a rope, under ordinary circumstances, is not likely to produce death. So, if appellant inflicted the injury with the rope in a cruel manner, although it was not likely, under ordinary circumstances, to produce death, the killing might not be murder. It might be manslaughter, under the statute cited. If the injury was inflicted in a cruel manner, and for the purpose of killing, of course, it would be murder; but if not for the purpose of killing, it might be manslaughter. Under ordinary circumstances, an assault upon a female is aggravated assault; and this being true, the intent to kill being absent, if a killing occur, it would ordinarily be manslaughter. Where the circumstances attending the homicide show an evil or cruel disposition, or that it was the design of the person offending to kill, he is deemed guilty of murder or manslaughter, according to the other facts of the case, though the instrument or means used may not in their nature be such as to produce death ordinarily. Art. 720, Penal Code. In view of these provisions of the Code, we think the court was in error, under the facts of this case, in giving the charge excepted to by appellant, especially as it limited the consideration of the jury to murder in the two degrees. The court, however, should have given articles 718 and 720 of the Penal Code in charge to the jury anyway, in view of the evidence adduced on the trial. Briefly stated, the testimony is that defendant, a few days prior to the death of the girl, inflicted upon her a cruel whipping with a rope, which resulted in serious bodily injury. On the occasion of the death there was no eyewitness to the whipping. The marks upon the body indicated a very cruel and unmerciful beating. One of her hands seemed to have been broken, and one of the finger nails torn off. A rope was found in the house, evidently the one which had been used in the chastisement. It had been recently washed, and was wet from the washing; but there was still blood in its cracks and interstices. The rope was a half inch or more in thickness and several feet in length. Now, a beating was inflicted, and in the most cruel manner; but whether it was done for the purpose of killing, or without such intent, is not shown, but left to deduction from the facts proved on the trial. Of course, if the chastisement was inflicted for the purpose of killing, it would be murder of one of the two degrees; if not for that purpose, it might be manslaughter, under our statute. The court failed to charge upon manslaughter, but limited the jury to murder in the first and second degrees.

For the errors indicated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

BROOKS, Judge, absent.